Don A. CERASOLI, Plaintiff,

v.

XOMED, INC., a subsidiary of Xomed Surgical Products, Defendant.

No. 96–CV–6341L.

United States District Court,
W.D. New York.

July 23, 1997.

Neal Anthony Murphy, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, Craig L. McGrain, Hodgson, Russ, Andrews, Woods & Goodyear, Rochester, NY, for Plaintiff.

Michael R. Law, Phillips, Lytle, Hitchcock, Blaine & Huber, Roschester, NY, Richard N. Margulies, Karen Ibach Bowden, Mahoney, Adams & Criser, Jacksonville, FL, for Defendants.

### DECISION AND ORDER

LARIMER, Chief Judge.

### BACKGROUND

Plaintiff, Don A. Cerasoli, commenced this action in New York State Supreme Court, Monroe County, on July 1, 1996. The original complaint asserted causes of action for breach of contract, negligent misrepresenta-

tion, and intentional misrepresentation by defendants Xomed, Inc., Xomed Surgical Products, and Merocel/Xomed Holding, Inc. (collectively "Xomed") in connection with a denial of plaintiff's application for long-term disability benefits pursuant to his employment contract with Xomed. Defendants removed the action to this court on July 29, 1996, partly on the basis that the action fell within the scope of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

On January 15, 1997, I granted defendants' motion to dismiss the complaint on the ground that all the claims were preempted by ERISA. I also granted plaintiff's motion for leave to amend the complaint to state a claim under ERISA. On January 30, 1997, plaintiff filed an amended complaint asserting seven causes of action under ERISA. Defendants have now moved to dismiss the amended complaint under Fed.R.Civ.P. 12(b)(6), or in the alternative for summary judgment under Rule 56. Because defendants have submitted materials outside the pleadings, I will treat the motion as one for summary judgment.[1]

The facts of this case are set forth in my January 30 Decision and Order, and will not be repeated at length here. In short, plaintiff alleges that when he accepted employment with Xomed, he was told that he would immediately be covered by Xomed's long-term disability plan ("the plan"). Shortly after he began working for Xomed, plaintiff was seriously injured during a business trip. His claim for long-term benefits was denied because his injury occurred fewer than ninety days after his employment began. Xomed's long-term disability insurance contract provides that coverage does not begin for new employees until the expiration of a ninety-day waiting period. Plaintiff alleges that Xomed misrepresented the availability of benefits to him, and that as a consequence, he did not obtain interim coverage.

The amended complaint asserts seven causes of action. The first claim alleges that plaintiff "was entitled to benefits under an ERISA plan sponsored by defendant Xomed" and that Xomed's failure to pay plaintiff benefits violates 29 U.S.C. § 1132(a)(1). The second cause of action alleges that Xomed's representations to plaintiff and other employees that benefits were available immediately upon employment effected a modification of the plan, and that Xomed's failure to pay benefits to plaintiff violates the plan as modified. The third cause of action alleges that Xomed gave plaintiff a written employment offer stating that disability benefits would be available immediately upon employment. Plaintiff alleges that this offer also modified the plan, and that Xomed violated the plan as modified by denying him benefits.

In the fourth cause of action, plaintiff alleges that his employment contract, combined with certain letters from Xomed to plaintiff and oral statements made by Xomed representatives to plaintiff, constitute a separate and distinct ERISA plan, which Xomed has violated. The fifth cause of action alleges that when Xomed represented to plaintiff that benefits were available upon employment, Xomed violated its fiduciary duty to him under 29 U.S.C. § 1109.

The sixth cause of action is based upon an estoppel theory. Plaintiff contends that Xomed should be estopped from denying benefits to him because of Xomed's alleged misrepresentations. In the seventh cause of action, plaintiff requests attorney's fees and punitive damages.

Based upon these causes of action, plaintiff requests the following relief: "[t]he full measure of benefits due under the plan"; equitable relief directing defendants "to take appropriate steps to fully compensate the plaintiff"; an order estopping defendants "from not providing plaintiff with the benefits under the plan"; attorney's fees and costs; and punitive damages.

---

1. Defendants contend that the submission of these materials does not automatically convert the motion to a summary judgment motion because the exhibits they have submitted are simply copies of the plan and summary plan descriptions at issue, which are referred to in the complaint and are integral to plaintiff's claims. Plaintiff, however, disputes that these exhibits are in fact the plan involved in this case, so the motion must be treated as one for summary judgment.

## DISCUSSION

### I. Breach of Fiduciary Duty and Equitable Estoppel Claims

Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), permits a plan participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan . . ." In cases involving alleged misrepresentations about plan benefits or the terms of a plan, courts have interpreted this provision to authorize suits under theories of both equitable estoppel and breach of fiduciary duty. *See, e.g., Varity Corp. v. Howe,* ── U.S. ──, ──── ────, 116 S.Ct. 1065, 1075–76, 134 L.Ed.2d 130 (1996) (fiduciary duty); *In re Unisys Corp.,* 57 F.3d 1255, 1268–69 (3d Cir.1995) (fiduciary duty), *cert. denied,* ── U.S. ──, 116 S.Ct. 1316, 134 L.Ed.2d 469, 470 (1996); *Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226, 235 (3d Cir.1994) (fiduciary duty and estoppel); *Center v. First Int'l Life Ins. Co.,* No. 94–11596, 1997 WL 136473 *13–14 (D.Mass. Mar.13, 1997) (fiduciary duty and estoppel); *Fortune v. Medical Associates of Woodhull, P.C.,* 803 F.Supp. 636, 641–42 (E.D.N.Y.1992) (fiduciary duty and estoppel). Construing the allegations of the complaint most favorably to plaintiff, and keeping in mind that there has been no discovery in this case, I find that plaintiff has stated causes of action under both these theories.

### A. Breach of Fiduciary Duty

◼ As the Supreme Court observed in *Varity,* " '[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA.' " *Varity,* ── U.S. at ──, 116 S.Ct. at 1074 (quoting *Peoria Union Stock Yards Co. v. Penn Mutual Life Ins. Co.,* 698 F.2d 320, 326 (7th Cir. 1983)). The Second Circuit has very recently joined courts of appeals in several other circuits in holding that "ERISA fiduciaries must provide complete and accurate information in response to beneficiaries' questions about plan terms and/or benefits." *Becker v. Eastman Kodak Co.,* 120 F.3d 5, 13 (2d

Cir.1997). Therefore, "when a plan administrator speaks, it must speak truthfully." *Mullins v. Pfizer, Inc.,* 23 F.3d 663, 669 (2d Cir.1994) (quoting *Fischer v. Philadelphia Elec. Co.,* 994 F.2d 130, 135 (3d Cir.), *cert. denied,* 510 U.S. 1020, 114 S.Ct. 622, 126 L.Ed.2d 586 (1993)). Accordingly, material misrepresentations about future benefits are actionable under ERISA. *Ballone v. Eastman Kodak Co.,* 109 F.3d 117, 122 (2d Cir. 1997).

◼ In the case at bar, plaintiff alleges that defendants affirmatively misrepresented to him that he would be eligible for long-term disability benefits as soon as he began his employment with Xomed. In order to prevail under the theory of breach of fiduciary duty, plaintiff will have to show: (1) that Xomed made a material misrepresentation; (2) that Xomed was acting in a fiduciary capacity when it made the misrepresentation; and (3) that plaintiff relied on that misrepresentation to his detriment. *Varity,* ── U.S. at ──, 116 S.Ct. at 1071; *Ballone,* 109 F.3d at 122, 126.

Defendants contend that Xomed is not a fiduciary with respect to the plan because it has no discretionary authority under the plan. Defendants maintain that the fiduciary is the Paul Revere Life Insurance Company ("Paul Revere"). According to defendants, Paul Revere has complete discretion to approve or deny claims for benefits, and Xomed is simply a conduit between Paul Revere and Xomed's employees. Defendants state that Xomed's duties with respect to the plan are purely clerical and ministerial.

◼ In pertinent part, ERISA defines the term "fiduciary" as anyone who "exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets, . . . or [who] has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Thus, "the linchpin of fiduciary status under ERISA is discretion." *Curcio,* 33 F.3d at 233.

In support of their assertion that Xomed is not a fiduciary, defendants quote the benefit summary prepared by Paul Revere and distributed to Xomed employees. The benefit summary states:

> The Paul Revere Insurance Company is the Claims Administrator for benefits contained in the group policies it has issued to your employer. As such, it has the full, final, conclusive, and binding authority to contrue [sic] and interpret any of its group insurance policies that provide benefits under your employer's welfare benefit plan as may be necessary to make any and all decisions and determinations under such policies.

Norma Lawton Aff. Ex. A–1 at 34.

There are several flaws in defendants' position, however. First, defendants concede that although Paul Revere is the *claims* administrator, Xomed is the plan administrator. The fact that Paul Revere may have full authority to interpret its insurance policies, or to make decisions on participants' claims, does not mean that other areas of plan administration might not be left to Xomed's discretion. In particular, informing employees about the existence or extent of their *coverage* could itself be considered a fiduciary act. *See Varity*, —— U.S. at ——, 116 S.Ct. at 1071 ("when the misrepresentations regarding employee benefits were made, Varity was wearing its 'fiduciary,' as well as its 'employer,' hat"); *Smith v. Hartford Ins. Group*, 6 F.3d 131, 141 n. 13 (3d Cir.1993) (by erroneously representing to employee that she would receive same level of coverage under new plan as she had under preexisting plan, employer acted in fiduciary capacity); *see also Fischer*, 994 F.2d at 133 ("As a plan administrator under ERISA, ... [the plaintiff's employer] was a fiduciary ...").

It should also be noted that the benefits summary itself suggests that Xomed might be a fiduciary with respect to the plan participants. The summary states that

> ERISA imposes duties upon the people who are responsible for the operation of the Employee Benefit Plan. The people who operate your plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

Lawton Aff. Ex. A–I at 36. As the plan administrator, Xomed certainly could be considered to be a party who "operated" the plan. *See Curcio*, 33 F.3d at 234 ("It seems obvious to us that a plan administrator has responsibility in the administration of the plan").

Another problem with defendants' position is that the only documents that they have submitted to the court are two benefits summaries prepared by Paul Revere, and an insurance policy issued by Paul Revere to Xomed. It is not apparent from the record, then, whether there are additional plan documents that more fully set forth Xomed's authority and responsibilities with regard to the administration of the plan. At the very least, then, questions of fact exist about whether Xomed is a plan fiduciary and whether it was acting in that capacity when it made the alleged misrepresentations to Cerasoli.

It is obvious that there are also factual issues about the other elements of plaintiff's claim for breach of fiduciary duty, *i.e.*, whether Xomed made material misrepresentations that plaintiff detrimentally relied upon. Defendants have not conceded that it made any misrepresentations to plaintiff, and it also remains to be determined whether plaintiff would have obtained interim coverage had he known about the ninety-day waiting period. *See Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund*, 933 F.Supp. 1124, 1146 (D.Mass.1996) (genuine issues of material fact existed where plaintiff alleged that he would have made other insurance arrangements had he known true extent of fund's financial difficulties, which he alleged were concealed from him by defendants).

Defendants argue that even if Xomed were a fiduciary, plaintiff has no remedy because he is not entitled to benefits under the plan. That argument is based upon circular reason-

**180**

ing. It was Xomed's alleged failure to apprise Cerasoli that he was *not* yet eligible for benefits that constituted the alleged breach of its fiduciary duty to him. Furthermore, this claim is not one for benefits under the plan; it is a claim against Xomed itself. *See Smith*, 6 F.3d at 141 n. 13 (action against employer for misrepresenting to employee extent of her coverage did not "implicate[ ] concerns regarding the actuarial soundness of an ERISA plan ..., because we hold the employer, not the Plan, is liable, and the employer need not satisfy any liabilities out of the Plan").

## B. Estoppel

■ Plaintiff has also stated a valid equitable estoppel claim. The Second Circuit has held that "under 'extraordinary circumstances' principles of estoppel can apply in ERISA cases." *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1039 (2d Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986)). "The elements of estoppel are (1) material misrepresentation, (2) reliance and (3) damage." *Lee*, 991 F.2d at 1009. Since this is an ERISA case, plaintiff must also demonstrate the existence of "extraordinary circumstances." *Id.; Curcio*, 33 F.3d at 235.

■ As already noted, there are clearly issues of fact about whether there was a material misrepresentation upon which plaintiff detrimentally relied. I also believe that there are issues concerning whether the circumstances here were "extraordinary" enough to apply estoppel principles to this case.

I recognize that, as defendants point out, there is case authority holding that the "extraordinary circumstances" test is met only in situations in which an employer makes representations about an ambiguous term in a plan. *See James v. New York City District Council of Carpenters' Benefit Funds*, 947 F.Supp. 622, 632 (S.D.N.Y.1996) (collecting cases from other circuits). The Second Circuit has not addressed this issue, however, and if the facts are as alleged in the complaint, this case might illustrate why such a

rule would be undesirable. To adopt this rule would mean that employers could make gross misrepresentations about the terms of plan and be shielded from liability simply because their statements did contradict the terms of the plan. *See Curcio*, 33 F.3d at 238 (employer's misrepresentation about type of coverage for which recipients could enroll, with result that plaintiff received $150,000 less in life insurance benefits than she believed she was entitled to, was "demonstrative of extraordinary circumstances").

■ Furthermore, it appears that plaintiff may not have received a copy of the plan summary at the time of his injury. Defendants contend that this is irrelevant because plaintiff did not request a copy. Aside from the fact that that is a factual issue, Xomed may have had a duty to inform Cerasoli of the ninety-day waiting period regardless of whether he specifically asked for the plan summary or other documents. "[I]t is clear that circumstances known to the fiduciary can give rise to this affirmative obligation [to inform] even absent a request by the beneficiary." *Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1016 (3d Cir.1997). At any rate, whether the circumstances of this case were truly extraordinary cannot be determined at this early stage of the case. *See Green v. First Reliance Std. Life Ins. Co.*, No. 96 CIV. 6859, 1997 WL 249967 *3 (S.D.N.Y. May 12, 1997) (denying motion to dismiss estoppel claim under ERISA, since whether extraordinary circumstances existed was question of fact).

## II. Modification of the Plan

■ Plaintiff's second and third causes of action allege that Xomed modified the plan, and then violated the plan as modified by denying plaintiff's claim for benefits. Counts two and three are similar to each other; the only difference is that count three is based upon Xomed's employment offer to plaintiff, and count two is based upon unspecified documents that Xomed gave plaintiff and other employees, and upon Xomed's alleged oral representations that benefits were available immediately upon employment.

In support of its motion for summary judgment on these claims, Xomed relies upon the rule that "absent a showing tantamount to proof of fraud, an ERISA welfare plan is not subject to amendment as a result of informal communications between an employer and plan beneficiaries." *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir.1988). The court in *Moore* affirmed summary judgment for the employer because the record in that case "contain[ed] no hint of bad faith, intent to deceive or even conduct that was objectively, if unintentionally, misleading on Metropolitan's part." *Id.*

One significant difference between *Moore* and the case at bar, though, is that the defendant in *Moore* moved for summary judgment *after* discovery. *Id.* at 491. There has been no discovery in the case at bar, however, and based on the allegations of the complaint I cannot say that plaintiff will not be able to adduce evidence "tantamount to proof of fraud."

Although the complaint does not expressly use the word "fraud," its factual allegations, if proved, could establish conduct on Xomed's part that is tantamount to fraud. The complaint alleges that Xomed consistently and repeatedly informed Cerasoli that his coverage began on March 20, 1995, the first day of his employment. At some point after he was injured on May 12, 1995, Xomed did an about-face, and told him that his coverage did not take effect until ninety days after March 20. Xomed's Human Resources Department also allegedly told Cerasoli that they had always known about the ninety-day waiting period, even though on March 20, they had informed him through a telephone call from Cerasoli's supervisor that his coverage began that day. The complaint further alleges that the Human Resources Department later told him that they had mistakenly told him on March 20 that his coverage began immediately, yet in still later conversations, they insisted that they had always told him about the waiting period, and even claimed that they had sent him written notification of the waiting period. Complaint ¶¶ 14–28.

If true, these allegations might support a finding that Xomed deliberately lied to, or concealed the truth from, Cerasoli, either by knowingly misinforming him that his disability coverage began on March 20, by failing to correct the error once Xomed realized that it was mistaken, or by falsely denying that it had given Cerasoli incorrect information. Whether any of these scenarios would be enough to find that Xomed had informally modified the plan under the *Moore* exception for fraudulent activity remains to be seen. There having been no discovery, however, I am unprepared to conclude at this juncture that under no set of circumstances will plaintiff be able to establish these claims. *See Adler v. Aztech Chas. P. Young Co.*, 807 F.Supp. 1068, 1071 (S.D.N.Y.1992) (denying motion to dismiss claim based on alleged modification of plan, since plaintiffs had alleged what could prove to be tantamount to proof of fraud).

### III. Eligibility for Benefits "Under an ERISA Plan Sponsored by Defendant Xomed"

In count one of the amended complaint, plaintiff alleges that he "was entitled to disability benefits under an ERISA plan sponsored by defendant Xomed." Complaint ¶ 31. Defendant contends that this claim should be dismissed because the only plan that plaintiff could possibly be referring to is the Paul Revere Plan, under which plaintiff is not entitled to benefits. In response, plaintiff asserts that the so-called Paul Revere Plan documents are not true plan documents, but simply insurance documents relating to an insurance contract between Paul Revere and Xomed.

Plaintiff has not identified the alleged plan that forms the basis for count one, nor has he pointed to any plan documents to support his allegation that he is entitled to benefits. Nevertheless, there having been no discovery in this case, I do not believe that summary judgment on this claim is warranted at this time. In particular, I note that at this point no formal written plan appears in the record; the only documents submitted thus far are an insurance policy and summaries prepared by Paul Revere. If no formal written plan does exist, the terms of the plan may be interpreted by reference

to such factors as the parties' intent, understanding, and past practice. *Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90, 96 (3d Cir.1992). It is possible that such evidence will support plaintiff's allegation that he is entitled to benefits. If after discovery plaintiff is unable to present any evidence in support of this claim, however, summary judgment will then be appropriate.

## IV. Claim Based on Alleged "Separate and Distinct" Plan

■ In count four, plaintiff alleges that defendants' written and oral statements "constitute in [sic] a separate and distinct plan ..." Complaint ¶ 50. This allegation is very similar to a claim that this court rejected in *Thomson v. Saatchi & Saatchi Holdings (USA), Inc.*, 958 F.Supp. 808 (W.D.N.Y. 1997). In *Thomson*, the plaintiff alleged that his former employer had promised him that his pension benefits, combined with his Social Security benefits, would equal roughly half of his average salary over the last five years of his employment. When he left the defendant's employ, however, his pension benefits were considerably lower than that. The plaintiff alleged that the employer's promises in this regard, combined with its abortive attempts to make good on those promises, created what the plaintiff called a "Supplemental Plan" that would provide him with benefits in addition to those he received under the pension plan.

In rejecting this claim, I noted that the test for determining whether a plan exists was set forth by the Eleventh Circuit in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982), which was cited with approval by the Second Circuit in *Grimo v. Blue Cross/ Blue Shield of Vermont*, 34 F.3d 148, 151 (2d Cir.1994):

> [A] welfare plan requires (1) a "plan, fund, or program" (2) established or maintained (3) by an employer or an employee organization, or both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal

services or severance benefits (5) to participants or their beneficiaries.

*Donovan*, 688 F.2d at 1371. The *Donovan* court also stated that

> a "plan, fund, or program" under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.... However, the "plan, fund, or program" need not be a formal written document. In fact, "[s]ome essentials of a plan, fund or program can be adopted, explicitly or implicitly, from sources outside the plan, fund, or program ..."

*Id.* at 1373.

Applying this analysis in *Thomson*, I held that "[t]he evidence show[ed] only that [the employer's vice president] erred in describing the amount of the benefits available under the ... Pension Plan." *Thomson*, 958 F.Supp. at 816. I also noted the Ninth Circuit's statement in *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1523 (9th Cir. 1993), that "the fact that the letters [from the employer to the plaintiff concerning his benefits] were mistaken cannot on that account alone create an ERISA plan. Otherwise, every communication about prospective benefits could create a unique plan for a single participant who is not differently situated from fellow employees for whom the plan is established." *Thomson*, 958 F.Supp. at 818.

*Thomson* is clearly on all fours with the instant case. All that plaintiff alleges is that he was told on several occasions, both orally and in writing, that he would be covered under the plan on the day he began his employment. These alleged statements, however, bear none of the hallmarks of a plan under the *Donovan* test. It is clear that Xomed has but one long-term disability plan, that these statements referred to that plan, and (assuming the truth of plaintiff's allegations about the content of those statements), that they were nothing more than erroneous explanations about when coverage commenced under the plan. That is simply not enough to create a wholly new plan.

## V. Claim for Punitive Damages and Attorney's Fees

Count seven of the complaint requests an award of attorney's fees under 29 U.S.C. § 1132(g) and punitive damages. It is clear that punitive damages may not be awarded under ERISA, and plaintiff has provided no authority to the contrary. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985); *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 286 (2d Cir.1992); *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 825 (1st Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *DeSimone v. Transprint USA, Inc.,* No. 94 CIV. 3130, 1996 WL 209951 *5 (S.D.N.Y. Apr.29, 1996); *D'Amore v. Stangle and DeNigris, Inc.,* No. 3:94CV01087, 1995 WL 704687 *2 (D.Conn. May 19, 1995); *Schonholz v. Long Island Jewish Med. Ctr.,* 858 F.Supp. 350, 354–55 (E.D.N.Y.1994). The claim for punitive damages is therefore dismissed.

Although § 1132(g) does permit the recovery of attorney's fees in ERISA actions, a request for fees does not in itself state a cause of action. Accordingly, count seven is dismissed, but without prejudice to plaintiff making a later application for fees if appropriate. *See Gerzog v. London Fog Corp.,* 907 F.Supp. 590, 603 (E.D.N.Y.1995) (dismissing claim for attorney's fees in ERISA action, but noting that dismissal did not preclude recovery of fees to the extent that they might otherwise be available as a result of plaintiff's substantive allegations in his other claims).

### CONCLUSION

Defendant's Motion for Summary Judgment (Item 29) is granted in part and denied in part. Defendant's motion is granted as to the fourth and seventh causes of action of the amended complaint. In all other respects, defendant's motion is denied.

IT IS SO ORDERED.