**Carl L. HOLSEY, M.D., Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, a Maine corporation, Detroit Receiving Hospital & University Health Center, Inc., a Michigan nonprofit corporation, Severally and jointly, Defendants.**

No. 95–CV–40388–FL.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 11, 1997.

John A. Dominic, Zamler, Mellen & Shiffman, P.C., Southfield, MI, for Carl L. Holsey.

Todd J. Shoudy, Dykema, Gossett, Bloomfield Hills, MI, for UNUM Life Ins. Co. of Amer.

Thomas R. Paxton, Eggenberger, Eggenberger, McKinney, Weber & Hofmeister, Detroit, MI, for UNUM Life Ins. Co. of America.

Joseph A. Ritok, Jr., Dykema, Gossett, Detroit, MI, for Detroit Receiving Hosp.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT DETROIT RECEIVING HOSPITAL'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff, Carl L. Holsey ("Holsey"), filed a complaint in this action on September 23, 1995, alleging breach of contract against Detroit Receiving Hospital ("DRH"), his employer, and UNUM Life Insurance Company ("UNUM"). Holsey seeks damages for disability benefits he claims were wrongfully denied to him under a disability policy provided by UNUM. On December 27, 1995, plaintiff filed a first amended complaint which added, in Count I, a claim under the Employee Retirement Income Security Act ("ERISA") against UNUM and in Count II, a breach of contract claim against DRH. On June 24, 1996, plaintiff filed a second amended complaint adding Count III, a claim for breach of fiduciary duty under ERISA against DRH. On October 28, 1996, this court granted summary judgment to UNUM on Count I and to DRH on Count II. The only remaining claim is Count III. On November 27, 1996, DRH filed the instant motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on Count III of plaintiff's second amended complaint. Plaintiff's response was due on December 17, 1996. *See* Local Rule 7.1(c) (E.D.Mich. Nov. 7, 1994) and Fed.R.Civ.P. 6(a). To date, no response has been filed. Pursuant to Local Rule 7.1(e)(2) (E.D.Mich. Nov. 7, 1994), this court has decided to dispense with oral argument and will decide the motions on the pleadings. For the reasons set forth below,

DRH's motion for summary judgment will be granted.

## I. Background

Holsey, an anesthesiologist, was hired by DRH in 1991. Prior to plaintiff's hire, he met with Edward Thomas, President of DRH to discuss the terms of his employment. This meeting included a discussion of the formal offer of employment, plaintiff's salary, and fringe benefits. After being hired by Mr. Thomas, Holsey met with Patrick Greaves, Vice President of Support Services Administration at Harper Hospital, regarding his fringe benefits. At this meeting, Holsey signed numerous documents and received documentation explaining his benefits, including a copy of the summary plan description for the long term disability plan. Holsey did not discuss the long term disability plain with Mr. Greaves at that time or on any other occasion.

At or around the same time, DRH purchased a long-term disability insurance policy for Holsey from UNUM. The policy specifically included a pre-existing condition exclusion. Plaintiff testified that he never read the policy or plan documentation.

Holsey alleges that on November 16, 1992, he became totally disabled due to blindness and was consequently unable to perform his duties as an anesthesiologist. When Holsey became disabled, he contacted Robert Peebles, Vice President of Human Resources, and requested an application for long-term disability insurance coverage under his UNUM policy. Peebles immediately forwarded an application form to Holsey. Holsey also requested a reference letter which he proposed to use in support of his application to an apartment complex he wanted to move into. As a result, Peebles also forwarded the requested reference letter to Holsey after the conversation.

Subsequently, UNUM determined that Holsey was ineligible for benefits due to a preexisting condition and denied his claim. According to UNUM, Holsey's preexisting condition was diabetes. Both Holsey and DRH were notified of the UNUM decision. Plaintiff sought reconsideration of UNUM's determination on April 13, 1993. After a second review of Holsey's file, UNUM upheld its previous determination that Holsey was ineligible. Again, both Holsey and DRH were notified of UNUM's decision.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration,* 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and sum-

mary judgment is appropriate. *Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir. 1993).

■ Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

### III.  Analysis

Plaintiff asserts that he was misled by DRH as to the benefits available to him under the policy. Specifically, plaintiff claims that DRH misled him regarding his long-term disability benefits in breach of its fiduciary obligations.

DRH argues that it is entitled to summary judgment because it was not acting in a fiduciary capacity when communicating with plaintiff about his disability benefits. Alternatively, DRH argues that even assuming, *arguendo,* that DRH was acting as an ERISA fiduciary, summary judgment is nevertheless warranted because: 1) it did not make any material misrepresentations to plaintiff regarding his benefits; and, 2) plaintiff did not detrimentally rely upon any communications made by DRH regarding his benefits.

The relevant ERISA provision states, in part, that:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (1985). ERISA further provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1) (1985). The fiduciary must exercise its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

■ It is well settled that an employer that sponsors a benefit plan is, at different times, both an employer and a plan fiduciary. *Varity Corp. v. Howe,* —— U.S. ——, 116, S.Ct. 1065, 134 L.Ed.2d 130 (1996). When performing functions related to the plan, the employer is a fiduciary and must act in accordance with the fiduciary duty rules of ERISA. *Id.* However, when the employer is only acting as an employer and not performing any fiduciary functions, it is not subject to the fiduciary duty rules. *Id.* Therefore, this court must analyze each action or communication of an employer separately to determine whether the employer was acting as an ERISA fiduciary or simply as an employer.

■ In this case, DRH was the plan administrator for the long-term disability insurance plan which was offered through UNUM. DRH purchased long-term disability insurance for plaintiff and provided him with a summary plan description which detailed the

terms of his plan, including the preexisting condition exclusion. UNUM, not DRH, made the decision to deny benefits to plaintiff on March 12, 1993. This situation is distinguishable from the situation in which the employer was directly involved in the decision-making process and consequently had a direct impact on whether the employee would receive benefits under a specific plan.

The Supreme Court in *Varity,* articulated four factors that must be analyzed to determine whether an employer is acting in a fiduciary capacity: (1) the factual context in which the statements were made; (2) the plan-related nature of the activity; (3) the authority held by those who made the statements to communicate as fiduciaries with plan beneficiaries; and (4) whether reasonable employees could have thought the employer was communicating to them as both a plan administrator and as an employer. *Id.* at ——, 116 S.Ct. at 1073.

In this case, using the *Varity* standard, plaintiff cannot establish that DRH was acting in a fiduciary capacity when it communicated to him about the benefits. The only people whom plaintiff alleges communicated to him in any significant manner regarding his benefits were Edward Thomas, President of DRH and Robert Peebles, Vice President of Human Resources. Plaintiff's discussions with Patrick Greaves, the Vice President of Support Services Administration, were not substantive as they centered around Greaves' daughter and not the terms of plaintiff's benefits.

According to plaintiff, Thomas and he met prior to his hire at DRH to discuss this coming to work at DRH. This meeting included a general discussion of the formal offer of employment, plaintiff's salary, and types of fringe benefits available, including the long term disability plan. Plaintiff's discussion with Peebles focused on his requests for the application for long-term benefits and a letter of reference discussing his salary which was submitted by plaintiff as part of an application to reside in an apartment complex.

This court finds that none of these communications, as a matter of law, rises to the level of a communication from a fiduciary to a plan participant about plan provisions. None of the discussions involved "discretionary acts of plan management and administration" as required by *Varity.* This court has been unable to find any legal authority, and since plaintiff has not even responded to the instant motion he, of course, has not provided any such authority, that would support a finding that these communications were made in the context of a fiduciary relationship for ERISA purposes. Moreover, plaintiff has not alleged any set of facts that would support his allegation that any of these DRH employees were acting as fiduciaries when they communicated with plaintiff.

These communications were merely discussions which occurred in the normal course of business. The preemployment discussion with Thomas, and for that matter the post-hire meeting with Greaves, regarding the terms and conditions of employment, and the distribution of benefit materials were a quintessential "employer" function and similar discussions occur with respect to all new hires. This court declines to broaden the definition of an ERISA fiduciary to include anyone who distributes a benefits booklet or who talks, generally, about employment benefits.

The letter to the apartment complex was also clearly not an exercise of ERISA fiduciary duties, but was a routine employer function. Mr. Peebles was not explaining the operation of the plan as it related to plaintiff, but was instead trying to help him get into his desired apartment complex.

The Sixth Circuit has stated that:

While employers clearly must satisfy fiduciary duties when administering benefit plans, it is equally plain that simply because an employer is also a benefits plan administrator "ERISA does not require that 'day-to-day corporate business transactions, which may have a collateral effect on prospective, contingent employee benefits, be performed solely in the interest of plan participants.'"

*Adams v. Avondale Indus.,* 905 F.2d 943, 947 (6th Cir.) *cert. denied,* 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990) (quoting citations omitted). No reasonable trier of fact could

find that DRH was acting in a fiduciary capacity based upon the facts of this case.

Because this court determines that, as a matter of law, DRH was not acting as an ERISA fiduciary in this instance, it need not address DRH's alternative arguments regarding materiality and reliance. Accordingly, this court will grant defendant DRH's motion for summary judgment.

### ORDER

IT IS HEREBY ORDERED that defendant, Detroit Receiving Hospital's, motion for summary judgment as to Count III of plaintiff's second amended complaint is **GRANTED.**

**SO ORDERED.**

### FINAL JUDGMENT

This matter having come before this court on defendant's motion for summary judgment, this court having considered the issues presented and being otherwise fully advised in the premises,

**THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that the defendant, Detroit Receiving Hospital's, motion for summary judgment is **GRANTED.**

IT IS FURTHER ORDERED AND ADJUDGED that plaintiff, Carl L. Holsey, M.D., take nothing against defendant, Detroit Receiving Hospital, as to Count III, the breach of fiduciary relationship claim, of the June 24, 1996 second amended complaint and that Count III is **DISMISSED** with prejudice.

**SO ORDERED.**