**Don A. CERASOLI, Plaintiff,**

v.

**XOMED, INC., a Subsidiary of Xomed Surgical Products, Merocel/Xomed Holding, Inc., Defendants.**

**No. 96–CV–6341L.**

United States District Court,
W.D. New York.

April 30, 1999.

Neal Anthony Murphy, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, Louis J. Micca, Boylan, Brown, Code, Fowler, Vigdor & Wilson, LLP, Rochester, NY, Craig L. McGrain, Patrick Tomovic, Hodgson, Russ, Andrews, Woods & Goodyear, Rochester, NY, for plaintiff.

Mark J. Moretti, Michael R. Law, Rochester, NY, Melissa A. Fingar, Phillips, Lytle, Hitchcock, Blaine & Huber, Rochester, NY, Richard N. Margulies, Karen Ibach Bowden, Mahoney, Adams & Criser, P.A.,

Jacksonville, FL, for Merocel/Xomed Holdings, Inc., defendant.

### DECISION AND ORDER

LARIMER, Chief Judge.

In this action brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, plaintiff Don A. Cerasoli alleges that his employer, Xomed, Inc., misrepresented to him that his coverage under Xomed's long-term disability plan ("the plan") would commence immediately upon his employment with Xomed, whereas in fact coverage did not begin until ninety days after he began working for Xomed. Plaintiff was seriously injured during that ninety-day period, and was denied benefits as a result.[1] Defendants are Xomed and its parent corporations, Xomed Surgical Products, Inc., and Merocel/Xomed Holding, Inc.

On July 23, 1997, I issued a Decision and Order granting in part defendants' motion for summary judgment. *Cerasoli v. Xomed, Inc.*, 972 F.Supp. 175 (W.D.N.Y. 1997) (*"Cerasoli II"*). I dismissed the plaintiff's fourth cause of action, which alleged that defendants had, through certain words and actions, created a second plan separate from the one at issue here, and the seventh cause of action, which purported to state a claim for punitive damages and attorney's fees.

Five causes of action remain. The first is a claim for benefits under the plan pursuant to 29 U.S.C. § 1132(a)(1). The second cause of action alleges that Xomed's representations to plaintiff and other employees that benefits were available immediately upon employment effected a modification of the plan, and that Xomed's failure to pay benefits to plaintiff violates the plan as modified. The third cause of action alleges that Xomed gave plaintiff a written employment offer stating that disability benefits would be available immediately upon employment. Plaintiff alleges that this offer also modified the plan, and that Xomed violated the plan as modified by denying him benefits. The fifth cause of action alleges that Xomed violated its fiduciary duty to plaintiff under 29 U.S.C. § 1109 by representing to him that benefits were available upon employment. In the sixth cause of action, plaintiff contends that Xomed should be estopped from denying benefits to him because of Xomed's alleged misrepresentations.

Both sides have moved for summary judgment. Defendants' motion seeks dismissal of the entire complaint. Plaintiff requests summary judgment on his fifth and sixth causes of action. Plaintiff has also moved for an award of attorney's fees.

### DISCUSSION

#### I. Claim for Benefits Under 29 U.S.C. § 1132(a)(1)

In count one of the amended complaint, plaintiff alleges that he is entitled to benefits under the plan. In their previous motion for summary judgment, defendants contended that this claim should be dismissed because plaintiff is barred from receiving benefits due to the ninety-day waiting period. I denied defendants' motion at that time primarily because there had been no discovery yet. Noting that apart from an insurance contract between Xomed and Paul Revere Life Insurance Company ("Paul Revere"), as well as a Summary Plan Description ("SPD"), no formal written plan appeared in the record, I stated that "[i]f no formal written plan does exist, the terms of the plan may be interpreted by reference to such factors as the parties' intent, understanding, and past practice.... If after discovery plaintiff is unable to present any evidence in support of this claim, ... summary judg-

---

1. The relevant facts are more fully laid out in a Decision and Order entered on January 15, 1997, which dismissed plaintiff's state-law claims on the ground that they were preempted by ERISA. *Cerasoli v. Xomed, Inc.*, 952 F.Supp. 152 (W.D.N.Y.1997) (*"Cerasoli I "*).

ment will then be appropriate." *Cerasoli II*, 972 F.Supp. at 181–82.

Plaintiff has not presented any additional evidence to show that he is actually entitled to benefits under the plan itself. All of the evidence that he has presented in support of his claims relates to theories of relief that depend upon actions or statements outside of the terms of the insurance policy and the SPD, which do appear to be the only documents that set forth the terms of eligibility for long-term disability benefits. To the extent that plaintiff may attempt to show that the parties' intent, understanding, or past practice supports his request for relief, any evidence concerning those matters would appear to relate more to those other theories (*e.g.* estoppel) than to his claim under § 1132(a)(1). Given the facts presented to the court, then, no rational finder of fact could reasonably conclude that plaintiff is entitled to benefits under the plan. Any possible basis for relief here would fall under one of plaintiff's other claims, and accordingly count one must be dismissed.

## II. Modification of the Plan

Both the second and third causes of action are based on allegations that Xomed modified the plan, and then violated the terms of the plan as modified. The second cause of action is based on representations that Xomed allegedly made to plaintiff and other employees that benefits were available immediately upon employment. The third cause of action is based on Xomed's written employment offer to plaintiff stating that disability benefits would be available as soon as he began his employment.

In my July 23, 1997 Decision and Order, I denied Xomed's motions to dismiss these claims primarily because there had been no discovery in the case at that point. Though recognizing the rule that "absent a showing tantamount to proof of fraud, an ERISA welfare plan is not subject to amendment as a result of informal communications between an employer and plan beneficiaries," *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir.1988), I stated that, there having been no discovery, I was not prepared at that juncture to hold that under no set of facts could plaintiff establish these claims. *Cerasoli II*, 972 F.Supp. at 181.

■ In response to defendants' summary judgment motion, plaintiff has added nothing in the way of either facts or argument regarding these claims. Remarkably, his papers filed in opposition to defendants' summary judgment motion do not even address these claims. Since plaintiff has not submitted any evidence tending to show acts by Xomed tantamount to fraud, these claims must be dismissed.

Plaintiff has simply not carried his burden in opposing defendants' motion with respect to these claims. A party opposing a well-founded motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). Plaintiff has presented no facts tending to show conduct tantamount to fraud on defendants' part. Although plaintiff's former attorney [2] states in a declaration that "Xomed has conducted a campaign to defeat Mr. Cerasoli's claims, including lying [and] trickery ...," Declaration of Craig L. McGrain (Item 46) ¶ 24, those allegations relate to Xomed's actions during this litigation; there is no evidence that Xomed's acts or omissions that gave rise to this lawsuit were egregious enough to effect a modification of the

---

2. By stipulation of the parties, new counsel was substituted for plaintiff on January 28, 1999.

plan under the standard enunciated in *Moore.*

■ I do note that in his prior brief in opposition to the motion to dismiss, plaintiff contended that the court could consider oral representations and written documents outside the plan itself because defendants had submitted no formal written "plan" as such. The fact remains, however, that ERISA requires every employee benefit plan to "be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1),[3] and a plan cannot be modified by informal communications, oral or otherwise, "absent a showing tantamount to proof of fraud." *Moore*, 856 F.2d at 492; *Green v. First Reliance Std. Life Ins. Co.*, No. 96 Civ. 6859, 1997 WL 249967 *3 (S.D.N.Y. May 12, 1997). Plaintiff has not made such a showing. Although he does rely on various statements and documents with respect to his claims for estoppel and breach of fiduciary duty, he has not met the stringent standard of *Moore* to show modification of the plan. In fact, in discussing his claim for breach of fiduciary duty, plaintiff states that Xomed's alleged misrepresentations "were made in blatant *ignorance* of the true facts of the availability of disability insurance" and that "[n]obody at Xomed had seen the Paul Revere policy and *Xomed had absolutely no idea of the true facts* during the time Mr. Cerasoli was applying for employment there." Plaintiff's Memorandum of Law in Support of His Motion for Summary Judgment at 19 (emphasis added). Accordingly, counts two and three must be dismissed.

### III. Breach of Fiduciary Duty

Plaintiff's fifth cause of action alleges that Xomed violated it fiduciary duty to him under 29 U.S.C. § 1109 by falsely representing to him that benefits would be available immediately upon his employment. Both sides have moved for summary judgment on this claim.

■ To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under a plan, the plaintiff must show: (1) that the defendant was acting in a fiduciary capacity when it made the alleged misrepresentations; (2) that the defendant made a material misrepresentation; and (3) that the plaintiff relied on that misrepresentation to his detriment. *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 1071, 134 L.Ed.2d 130 (1996); *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 122, 126 (2d Cir.1997).

The first issue, then, is whether Xomed was acting in a fiduciary capacity when it allegedly informed plaintiff that he would be covered under the long-term disability plan as soon as he began his employment. In support of its assertion that it was not acting in a fiduciary capacity, Xomed relies in part on a regulation promulgated by the Department of Labor stating that "persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures," but who perform various administrative functions for an employee benefit plan, including "[o]rientation of new participants and advising participants of their rights and options under the plan," are not fiduciaries with respect to the plan. 29 C.F.R. § 2509.75–8. Xomed contends that since plaintiff's fiduciary-duty claim arises out of Xomed's advising plaintiff of his rights under the plan, Xomed was not acting in a fiduciary capacity.

Plaintiff, however, notes that the regulation, which was promulgated in 1975, also states that in applying the regulation, "the effect of subsequent legislation, regulations, court decisions, and interpretive bulletins must be considered." *Id.* Plaintiff contends that the portion of the regulation

---

**3.** Although the plan must be established and maintained pursuant to a written document, it need not be a single, formal document. *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir.1982) (en banc). Thus, the absence in this case of a formal plan document does not mean that there is no valid plan in existence, and both sides agree that there is such a plan.

upon which defendants rely has been altered by the Supreme Court's holding in *Varity*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130. In *Varity*, the Court held that the defendant, which was both the plaintiffs' employer and their welfare benefit plan administrator, acted in a fiduciary capacity when, at a special meeting convened by the defendant, it advised the plaintiffs that their benefits would remain secure if they voluntarily transferred to a newly-created subsidiary corporation to which the defendant was transferring certain money-losing divisions, in which the plaintiffs worked. In fact, however, as the defendant well knew, the subsidiary was insolvent from day one, and after two years ended in a receivership, under which its employees, including the plaintiffs, lost their nonpension benefits. The Supreme Court held "that the factual context in which the statements were made, combined with the plan-related nature of the activity, engaged in by those who had plan-related authority to do so, together provide[d] sufficient support for the District Court's legal conclusion that Varity was acting as a fiduciary." *Id.* at 1073.

At first blush, neither the regulation nor *Varity* provides a clear, obvious answer to the question of whether Xomed acted as a fiduciary in informing plaintiff about the commencement of his disability coverage. For one thing, *Varity* did not announce a broad, general rule that informing employees of their rights or options under a plan automatically gives rise to a fiduciary relationship. The decision in *Varity* was expressly limited to the "factual context" of that case. *Id.* Even assuming the truth of all of plaintiff's factual allegations, Xomed's actions were not as egregious as Varity's, which amounted to deliberate deception of its employees in order to save money by eliminating the employees' nonpension benefits. While § 2509.75–8 must be read against the backdrop of *Varity*, then, *Varity* did not overrule that regulation's inclusion of "[o]rientation of new participants and advising participants of their rights and options under the plan"

among its list of activities that do not give rise to a fiduciary relationship.

The regulation's applicability to this case also is not entirely clear, for it speaks of "persons who have *no power* to make any decisions as to plan policy, interpretations, practices or procedures...." 29 C.F.R. § 2509.75–8 (emphasis added). Defendants concede that Xomed is the plan administrator, and the "blanket" SPD covering all of Xomed's employee benefit plans states that "[i]n carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." McGrain Declaration Ex. K. This seems to suggest that Xomed does not fall within the group of persons referred to in § 2509.75–8, because it seemingly does have some power to make decisions as to plan interpretations and practices.

■ A closer reading of the blanket SPD, though, in conjunction with the SPD that specifically covers the long-term disability plan ("the disability SPD"), indicates that Xomed's role with respect to administration of the plan is far more limited than it first appears. As stated, the blanket SPD states that the plan administrator and other plan fiduciaries have discretionary authority "[i]n carrying out their respective responsibilities under the Plan...." To determine what those responsibilities are, then, one must refer to the particular plan at issue. The disability SPD states that Xomed "is considered to be [Paul Revere's] agent only for these two events: 1. collecting premium; and 2. giving out certificates of insurance." Reply Declaration of Craig L. McGrain (Item 60) Ex. V at 31. In addition, the disability SPD states that

[t]he Paul Revere Life Insurance Company, is the Claims Administrator for benefits contained in the group policies

it has issued to your employer. As such, it has the full, final, conclusive, and binding authority to contrue [sic] and interpret any of its group insurance policies that provide benefits· under your employer's welfare benefit plan as may be necessary to make any and all decisions and determinations under such policies. *Id.* at 34. The insurance policy itself also contains the statement about the employer being Paul Revere's agent only for collecting premiums and giving out certificates of insurance, and apart from those two ministerial duties, about the only additional obligation put upon Xomed is to "provide [Xomed] with the information [it] need[s] to administer this insurance contract and compute the premium." Defendant's Motion to Dismiss (Item 29) Ex. B § 8.

It appears, then, that with respect to the long-term disability plan, Xomed has little if any discretionary ·authority. Since the blanket SPD is broader and more general in its scope, the terms of the disability SPD, which is narrower in its focus and applies specifically and solely to the long-term disability plan, should control. Based on the disability SPD and the insurance policy itself, I find as a matter of law that Xomed does not have discretionary authority with respect to the plan and hence did not act as a fiduciary in advising plaintiff when he would be eligible for benefits. Thus, Xomed falls· squarely within the category of nonfiduciaries described in § 2509.75–8.

I also believe that *Varity* is not controlling here and does not require a different result. For one thing, the employer in *Varity* did not deny that it was a fiduciary; it argued only that it was not acting in a fiduciary capacity when it made misrepresentations to its employees. As stated, then, *Varity* does not stand for the proposition that advising an employee of his rights under a plan gives rise to fiduciary status. That status arises only from the employer's possession or exercise of discretionary authority, responsibility or control respecting the management or administration of a plan. 29 U.S.C. § 1002(21)(A); *Varity,* 116 S.Ct. at 1071.

■■ I also recognize that 29 C.F.R. § 2509.75–8, in addition to setting forth certain activities that do not give rise to fiduciary status, states that "a plan administrator ... must, be [sic] the very nature of his position, have 'discretionary responsibility in the administration' of the plan within the meaning of [29 U.S.C. § 1002(21)(A)(iii) ]. Persons who hold such· positions will therefore be fiduciaries." It is clear from the case law, however, that there is no *per se* rule in this regard. It is not simply the title "plan administrator" that is controlling, but the amount of discretion given to the plan administrator. "[W]hether or not an individual or entity [is] an ERISA fiduciary must be determined by focusing on the function performed, rather than the title held." *Blatt v. Marshall and Lassman,* 812 F.2d 810, 812 (2d Cir.1987). *See also Consolidated Beef Indus. v. New York Life Ins. Co.,* 949 F.2d 960, 964 (8th Cir.1991) ("a person's title does not necessarily determine if one is a fiduciary"), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992). If the plan administrator lacks discretionary authority over the administration or management of a plan, then, it is not a fiduciary, regardless of its title. *See Kyle Railways, Inc. v. Pacific Admin. Servs., Inc.,* 990 F.2d 513, 516 (9th Cir.1993) ("third-party administrators ... are not fiduciaries under ERISA when they merely perform ministerial duties or process claims"); *Baker v. Big Star Div. of the Grand Union Co.,* 893 F.2d 288, 290 (11th Cir.1989) ("a plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary"); *accord Howard v. Parisian, Inc.,* 807 F.2d 1560, 1564 (11th Cir.1987); *Munoz v. Prudential Ins. Co. of America,* 633 F.Supp. 564, 568 (D.Colo.1986) (plan administrator not a fiduciary where neither language of plan nor conduct of administrator suggested it had ability to perform nonministerial functions).

A number of courts have held that named plan administrators—and in one case, an administrator that was described as the "Plan Fiduciary" in the plan summary—were not fiduciaries because they did not possess the requisite discretionary authority or control. For example, in *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir.1992), the Court of Appeals for the Seventh Circuit, stating that "ERISA makes the existence of discretion a sine qua non of fiduciary duty," held that because the plan administrator in that case had no discretion and performed merely "clerical, mechanical, ministerial" functions, it was not a fiduciary.

In *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir.1985), the Court of Appeals for the Ninth Circuit affirmed the district court's finding that a plan administrator whose duties were confined to processing claims was not an ERISA fiduciary. Even though the administrator was listed as the "Plan Fiduciary" in the plan summary, the court found that the terms of the plan itself, which gave the administrator no discretionary authority, were controlling.

The court in *Boucher v. Williams*, 13 F.Supp.2d 84, 91 (D.Me.1998), though recognizing the Department of Labor's statement in § 2509.75–8 that the position of plan administrator inherently carries with it discretionary authority, stated that the same regulation's statement that a person who performs only ministerial duties is not a fiduciary "suggests, and case law confirms, that fiduciary status depends not on whether one is titled 'plan administrator,' but on whether a plan administrator has discretionary policy-making power or simply performs ministerial functions within a framework of policies made by others." The court held that the plan administrator in that case, whose duties were limited mostly to collecting contributions and paying premiums, was not a fiduciary with respect to the plan. *Id.* at 92.

In *Holsey v. UNUM Life Ins. Co. of America*, 954 F.Supp. 144 (E.D.Mich.1997), the plaintiff sued his employer and the insurance company that had issued the employer's long-term disability insurance policy after the insurer denied his claim for benefits based on a preexisting-condition exclusion. The plaintiff claimed that in the course of several discussions at around the time of plaintiff's hire, the employer (which was also the plan administrator) had misled him regarding his long-term disability benefits in violation of its fiduciary obligations, although the court's decision does not make clear the exact nature of the alleged misrepresentations. The court held that under the standard enunciated by the Supreme Court in *Varity*, the plaintiff could not establish that the employer was acting in a fiduciary capacity when it communicated to him about his benefits. Stating that "[n]one of the discussions involved 'discretionary acts of plan management and administration' as required by *Varity*," the court said that it "ha[d] been unable to find any legal authority ... that would support a finding that these communications were made in the context of a fiduciary relationship for ERISA purposes." Because "[t]hese communications were merely discussions which occurred in the normal course of business," the court said that it "decline[d] to broaden the definition of an ERISA fiduciary to include anyone who distributes a benefits booklet or who talks, generally, about employment benefits." *Id.* at 148.[4]

In *Bollenbacher v. Helena Chem. Co.*, 934 F.Supp. 1015 (N.D.Ind.1996), the plaintiff sued his former employer and an insurance company, claiming that he had been wrongfully denied benefits under a long-term disability plan offered by the employer to its employees pursuant to an insurance policy that the employer had

---

**4.** I recognize, as pointed out by plaintiff, that the defendant's motion for summary judgment in *Holsey* was unopposed. I find the court's reasoning in that case no less sound because of that, however.

purchased. One of the plaintiff's claims was that the employer had breached its fiduciary duty to him. Although the plaintiff in *Bollenbacher* does not appear to have alleged that the employer had misled him in any way about his rights under the plan, he did base his claim that the employer was a fiduciary on certain representations that had been made to him by the employer's human resources director. The court rejected that argument. Although the employer was the named plan administrator, *id.* at 1021, the court held that the plaintiff's arguments in this regard "involve[d] an overly broad interpretation of *Varity* and also ignore[d] crucial facts in that case." *Id.* at 1024. For one thing, the court noted, the parties in *Varity* did not dispute that the employer in that case was a fiduciary; the issue in *Varity* was not whether the employer became a fiduciary by virtue of the representations that it had made to its employees, but whether it had acted in its capacity as a fiduciary or only as an employer when it made those representations. Stating that the facts in *Bollenbacher* were "dramatically different" from those in *Varity*, *id.*, the court said that the human resources director's conversation with the plaintiff, in which she discussed with him why, in her opinion, the plaintiff was not entitled to benefits, "f[e]ll more properly within those specific functions which the regulations [at § 2509.75–8] specifically hold are *not* fiduciary in nature," *i.e.,* the application of rules determining eligibility for benefits, and advising participants of their rights and options under a plan. *Id.*

In support of his assertion that Xomed acted in a fiduciary capacity, plaintiff cites the Second Circuit's statement in *Ballone,* 109 F.3d at 123, that "a plan administrator has a fiduciary duty not to make material misrepresentations regarding the availability of future plan benefits...." As in *Varity,* however, the issue before the court in *Ballone* was not whether the defendant was a fiduciary, but whether its alleged misrepresentations were "material." *Id.* at 122–25. I read that statement, then, not as categorizing plan administrators as *per se* fiduciaries, but as defining the scope of the duty imposed upon plan administrators who *are* fiduciaries to begin with.

■ I also find that, even if Xomed has some discretionary authority that makes it both an employer and a fiduciary, Xomed was not wearing its fiduciary "hat" when it made the alleged misrepresentations to plaintiff. The statements about plaintiff's disability coverage, viewed in context, were made by Xomed in its capacity as plaintiff's employer, to inform him about a number of matters relating to his status as a new employee.

Plaintiff alleges that on the first day of his employment at Xomed, he met with Terry Schroeder, plaintiff's supervisor. Among other things that they discussed, plaintiff asked Schroeder about the effective date of his various insurance benefits. Schroeder allegedly called Xomed's Human Resources Department and, based on their response, told plaintiff that his benefits all became effective as of March 20, 1995.

The other communication upon which plaintiff principally relies [5] is a letter dated March 21, 1995, from Marilyn Glover, a Compensation/Benefits Assistant at Xomed. The letter states, "Enclosed are some papers and forms for you to complete the new hire process at Xomed." Those forms included several insurance-related forms, forms relating to Xomed's 401(k) plan, and miscellaneous forms for plaintiff's personnel file. The letter stated,

---

5. In his third cause of action alleging a modification of the plan, plaintiff also alleges that his written offer of employment from Xomed provided for "disability benefits immediately upon the commencement of his employment." Amended Complaint ¶ 46. Although the letter does state that plaintiff would be eligible for a benefits package that included "Short and Long Term Disability benefits," nowhere does it say or imply when the benefits would take effect. *Id.* Ex. A.

"The insurance is effective the first day of hire." Amended Complaint Ex. B.

These statements, then, were simply part of an overall discussion about a range of matters relating to plaintiff's employment. Such statements are routinely made to new employees in any business, and to hold that they give rise to a fiduciary duty would be to expand ERISA's reach well beyond what is warranted by the statute itself or under the case law. *Holsey*, 954 F.Supp. at 148 (describing discussions that covered a number of matters relating to terms and conditions of plaintiff's employment, including disability benefits, as "a quintessential 'employer' function," and observing that "similar discussions occur with respect to all new hires").

The contrast between the facts here and those in *Varity*, which as stated was a highly fact-specific decision, is instructive. In *Varity*, the employer summoned all the employees of its money-losing divisions to a special meeting convened for the specific purpose of discussing the future of their benefits if they changed their benefit plans to the plan being offered by the newly-created transferee subsidiary. The employees were given a lengthy presentation and four documents, all of which conveyed the deliberately false message that the employees' benefits would be safe if they made the change.

After reviewing these facts, the Court stated that "[t]o offer beneficiaries detailed plan information in order to help them decide whether to remain with the company is essentially . . . plan-related activity." *Varity*, 116 S.Ct. at 1073. The Court also noted that the information given to the employees "came from those within the firm who had authority to communicate as fiduciaries with plan beneficiaries." *Id.* Lastly, the Court said, the employees' acceptance of Varity's assurances that their benefits would remain secure could well have been influenced by their belief that Varity, as the plan administrator, had expert knowledge about how their plan worked, and the employees therefore might not have distinguished consciously between Varity's dual roles as employer and plan administrator. *Id.*

In reaching its decision, the Court repeatedly stressed that its holding was dependent upon the factual context in which it was reached. For example, the Court stated that the district court had correctly concluded that Varity had spoken in its capacity as plan administrator "given [the district court's] view of the facts." *Id.* at 1072. The Court stated that "the factual context in which the statements were made" supported the district court's conclusion. *Id.* at 1073. Accepting the district court's finding that Varity connected its statements predicting a rosy future for the new subsidiary to statements it made about the future of benefits, thereby rendering the statements about benefits misleading, the Court said that "making intentional representations about the future or plan benefits *in that context* is an act of plan administration." *Id.* at 1074 (emphasis added).

In contrast, the statements allegedly made to plaintiff in the case at bar were made not at a meeting held specifically to discuss plaintiff's benefits, but as part of a broader, general discussion of various matters relating to the commencement of his employment. To hold that under this set of facts, Xomed acted as a plan fiduciary in advising plaintiff that his disability benefits were available immediately, would stretch the holding of *Varity* far beyond its factual context, which the Supreme Court stressed was so crucial to its holding. The brief statements about Cerasoli's benefits were not made at a meeting held expressly and solely to discuss plaintiff's benefits; they were not intended to persuade plaintiff to take any particular action, such as switching to a different plan; they were not made for Xomed's own financial benefit; and based on plaintiff's own allegations, they were not intentionally misleading, but at most simply mistaken. Based upon the context in which they were made, these statements related more

to plaintiff's employment in general than to his particular rights under the plan, and they cannot be said to have been made in connection with Xomed's administration or management of the plan.

Plaintiff incorrectly asserts that "this Court has already reviewed and rejected Xomed's claims that it could not act in a fiduciary capacity." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Item 59) at 7. Plaintiff bases this assertion on my statements in my July 23, 1997 Decision and Order that "informing employees about the existence or extent of their coverage could itself be considered a fiduciary act," and that the SPD "suggests that Xomed might be a fiduciary with respect to the plan participants" because it states, "The people who operate your plan, called 'fiduciaries' of the Plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries." *Cerasoli II*, 972 F.Supp. at 179.

As is evident from that decision, however, I did not hold that Xomed could not assert that it was not acting in a fiduciary capacity when it made the statements in question. I held only that at that stage of the case, there having been no discovery at all, plaintiff had adequately stated a cause of action for breach of fiduciary duty. For example, I noted the possibility that discovery might yield some additional documents that could set forth Xomed's duties as the plan administrator in more detail. *Id.* That has not occurred; instead, the record now demonstrates conclusively that Xomed has no discretionary authority with respect to plan administration. Thus, nothing in my prior decision foreclosed the possibility that, after discovery, Xomed might be able to establish its entitlement to summary judgment on this claim, as indeed it now has.

Since I find that Xomed did not act as a fiduciary when it made the statements at issue, plaintiff cannot recover on his claim that Xomed breached its fiduciary duty to him. It is therefore unnecessary for me to address whether there are issues of fact relating to the other elements of this claim, *i.e.,* whether Xomed made a material misrepresentation, and whether plaintiff detrimentally relied upon that misrepresentation. Plaintiff's fifth cause of action is therefore dismissed.

## IV. Equitable Estoppel

 Plaintiff's sixth cause of action asserts a claim based on a theory of equitable estoppel. To establish this claim, plaintiff must show: (1) that defendants made a promise to plaintiff; (2) upon which plaintiff relied; (3) to his detriment; and (4) that an injustice would occur if the promise were not enforced. *Bonovich v. Knights of Columbus,* 146 F.3d 57, 62 (2d Cir.1998). The Second Circuit has held, however, that equitable estoppel applies in ERISA cases only in "extraordinary circumstances." *Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 78 (2d Cir.), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 511, 136 L.Ed.2d 401 (1996).

I find that this claim cannot stand. First, as stated earlier, plaintiff's allegations amount to little more than a claim that Xomed made a mistake when it told him that he would be covered immediately. Essentially, then, plaintiff is asserting a negligence claim. However, "[a]rguments that negligent misrepresentations 'estop' sponsors or administrators from enforcing the plans' written terms have been singularly unsuccessful." *Decatur Mem'l Hosp. v. Connecticut Gen. Life Ins. Co.,* 990 F.2d 925, 926–27 (7th Cir.1993).

 The more fundamental problem with this claim, though, is that while it may be styled as an estoppel claim, what plaintiff actually seeks under this claim are extracontractual damages. Such relief is not available under ERISA.

In *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), the Supreme Court held that compensatory damages are not recoverable in a claim brought under 29 U.S.C.

§ 1132(a)(3). The Court in *Mertens* interpreted § 1132(a)(3)(B)'s provision for "other equitable relief" to preclude claims for monetary damages, which the Court described as "the classic form of *legal* relief." *Id.* at 255, 113 S.Ct. 2063.

As stated, plaintiff has no claim for benefits under the plan itself. All his claims are based on Xomed's alleged failure to inform him that he was not covered under the plan. Any award of damages, then, would plainly not be "contractual," since they would not be awarded pursuant to the terms of the plan. In fact, it appears that the proper measure of damages here—were damages available—would not even be the amount of benefits that plaintiff would have received had he been covered under the *plan,* but the amount that he would have received had he purchased his own, *separate* policy to cover the ninety-day waiting period. His damages, then, would not even be calculated by reference to the contract at issue, *i.e.,* the policy issued by Paul R to Xomed. At any rate, the relief that plaintiff seeks here is certainly not the equitable relief provided for in § 1132(a)(3)(B).

This conclusion finds support in the case law, both in this circuit and others. In *Lee v. Burkhart,* 991 F.2d 1004 (2d Cir.1993), the plaintiffs sued the insurance company that had administered their claims for disability benefits, alleging that the company had breached its fiduciary duty to them by failing to inform them that their disability benefits plan was self-funded by their former employer, and not insured by the defendant. After the former employer declared bankruptcy, the defendant denied the plaintiffs' claims for benefits because of the employer's failure to pay premiums. Holding that the plaintiffs were not entitled to relief under § 1132(a)(3), the court stated that

> [t]he complaint does not . . . seek equitable relief; rather, it asks for damages. Money damages are generally unavailable under this section. The plain language of the statute does not provide for

monetary relief and a review of the legislative history confirms that Congress did not contemplate that this phrase ["appropriate equitable relief"] would include an award of money damages.

*Id.* at 1011 (citation omitted).

In *McLeod v. Oregon Lithoprint, Inc.,* 102 F.3d 376 (9th Cir.1996), *cert. denied,* 520 U.S. 1230, 117 S.Ct. 1823, 137 L.Ed.2d 1030 (1997), a case factually similar to the one at bar, the Ninth Circuit reached a like conclusion. The plaintiff in *McLeod* sued her employer, alleging that it had breached its fiduciary duty to her by failing to inform her that she had become eligible to apply for coverage under a cancer insurance policy. Had she been aware of that fact, she alleged, she would have elected such coverage. The plaintiff, who had developed cancer in the interim, sought a judgment for the amount of benefits that would have been paid to her had she elected coverage.

Affirming the district court's grant of summary judgment for the defendant, the Court of Appeals for the Ninth Circuit stated:

> The relief which McLeod seeks is not "equitable relief." She does not seek an injunction, mandamus, or restitution. The complaint does not allege fraud on the part of the plan fiduciaries. There is no allegation of a fund which was wrongfully withheld from McLeod. The basis of her complaint is that the fiduciaries failed to notify her in a timely manner of her right to elect cancer coverage. This is in essence a negligence claim, for which she seeks to be made whole through an award of money damages equal in amount to the benefits that she would have been paid and compensation for her emotional distress.

*Id.* at 378. Such damages, the court concluded, were barred by the Supreme Court's holding in *Mertens.*

Likewise, in *Slice v. Sons of Norway,* 34 F.3d 630 (8th Cir.1994), the plaintiff sued his former employer under ERISA, assert-

ing claims of breach of contract, equitable estoppel, and breach of fiduciary duty. The defendant had been paying the plaintiff retirement benefits of $251.87 per month for the first two years of his retirement, but then informed him that due to a computational error, it had been overpaying him and that he was only entitled to $105.80 per month. The plaintiff did not dispute that $105.80 was the correct calculation of his monthly benefits. Affirming the district court's dismissal of the complaint for failure to state a claim upon which relief could be granted, the Court of Appeals for the Eight Circuit stated:

> In the present case, Slice attempts to categorize his theory of liability, equitable estoppel, as a form of equitable relief. Nevertheless, the relief he seeks is money damages to compensate him for his alleged reliance on Norway's extracontractual promise. [W]e understand "appropriate equitable relief" to refer to equitable remedies. Such remedies exclude money damages, "the classic form of *legal* relief."

*Id.* at 633 (citing *Mertens*, 508 U.S. at 255, 113 S.Ct. 2063). The court concluded that the relief the plaintiff sought was "not available under 29 U.S.C. § 1132(a)(3)(B) because he is essentially seeking money damages." *Id.*

In *Novak v. Andersen Corp.*, 962 F.2d 757 (8th Cir.1992), *cert. denied*, 508 U.S. 959, 113 S.Ct. 2928, 124 L.Ed.2d 678 (1993), the plaintiff sued his former employer and its employee stock ownership plan, alleging breach of fiduciary duty based on the defendants' alleged failure to apprise him of a "roll-over option" for distribution of benefits, pursuant to which the plaintiff's distribution would not have been immediately subject to tax. The plaintiff alleged that because he was unaware of this option, he was taxed on the entire distribution of benefits that he received when he quit his job. Holding that the damages sought by the plaintiff were not equitable relief within the meaning of § 1132(a)(3), the Eighth Circuit stated that

it found "nothing in the statutory language to persuade us to interpret 'other appropriate equitable relief' to mean anything other than what it usually means—declaratory or injunctive relief." *Id.* at 760.

Other courts, including several district courts from within this circuit, have reached similar conclusions. *See, e.g., Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 824 (1st Cir.1988) (" 'Other appropriate equitable relief' should be interpreted to mean what it says—declaratory or injunctive relief, not compensatory and punitive damages"), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *Thomas v. Board of Trustees of Int'l Union of Operating Engineers, Local 542*, No. CIV. A. 97–CV–2423, 1998 WL 334627 *9 (E.D.Pa. June 24, 1998) ("ERISA does not authorize an award of compensatory damages against non-fiduciaries"); *DeSimone v. Transprint USA, Inc.*, No. 94 CIV. 3130, 1996 WL 209951 *5 (S.D.N.Y. Apr.29, 1996) ("compensatory damages are not available in an ERISA action"; striking claim for such damages *sua sponte* ); *Jordan v. Retirement Committee of Contributory Defined Benefit Retirement Plan at Rensselaer Polytechnic Inst.*, 875 F.Supp. 125, 127 (N.D.N.Y. 1995) ("Since plaintiff seeks money damages and not equitable relief, it is clear that he may not proceed under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)"); *D'Amore v. Stangle and DeNigris*, No. 3:94CV01087, 1995 WL 704687 *2 (D.Conn. May 19, 1995) ("If the plaintiffs are correct, then the phrase 'other appropriate equitable relief,' in the statute, implies legal as well as equitable relief. As the Supreme Court stated in *Mertens*, 'We will not read the statute to render the modifier superfluous' ") (quoting *Mertens*, 113 S.Ct. at 2069).

The fact that this claim is presented as an *equitable* estoppel claim also makes no difference, since the actual relief sought by plaintiff is legal in nature. "It makes no difference that the [plaintiff's] claim is equitable in nature. The Court in *Mertens*

looked to the substance of the remedy sought (i.e., injunction versus damages) rather than the label placed on that remedy." *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1528 n. 5 (9th Cir.1993) (citing *Mertens*, 508 U.S. at 255, 113 S.Ct. 2063); *accord Slice*, 34 F.3d at 633.

This case is also distinguishable from those cases in which courts have permitted equitable estoppel ERISA claims to go forward against *claims* administrators. In those cases, the plaintiffs were usually told by the claims administrator (typically an insurance company) that they would be entitled to coverage, but when the plaintiffs filed claims, the claims were denied. *See, e.g., Green v. First Reliance Std. Life Ins. Co.*, No. 96 CIV. 6859, 1997 WL 249967 (S.D.N.Y. May 12, 1997); *Fortune v. Medical Associates of Woodhull, P.C.*, 803 F.Supp. 636, 642 (E.D.N.Y.1992); *Fitch v. Arkansas Blue Cross and Blue Shield*, 795 F.Supp. 904 (W.D.Ark.1992).

▆ The significance of this distinction is simple: the claims administrator is the party that has the power to determine whether an employee is eligible for benefits under a plan. As such, it can be estopped, by virtue of its prior representations, from denying benefits under the plan. In other words, the claims administrator cannot inform a beneficiary that he is entitled to benefits, and then, when the employee submits a claim, do an about-face and say that he is not. Here, however, Xomed, which is only the plan administrator and which did not act in a fiduciary capacity when it made the alleged misrepresentations, has no power to award plaintiff benefits *under the plan;* even if it now stated that plaintiff was covered at the time of his injury, that would have no effect on Paul Revere's determination that he was not. All that Xomed could do,

then—and what plaintiff seeks it to do—is give plaintiff extracontractual benefits, which ERISA forbids.[6]

It is true that this result apparently leaves plaintiff with no avenue of relief. His claims under state law were preempted by ERISA because they unquestionably related to an employee benefit plan, but given the nature of the relief he seeks, *i.e.*, benefits to which he is not entitled under the terms of the plan, ERISA affords him no remedy. Although this result may seem harsh, courts have recognized their obligation to abide by Congress's intent in this area, and to avoid taking on the role of legislator by creating remedies that are not provided for by ERISA itself.

In *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6 (2d Cir.1992), for example, the plaintiff sued his employer in state court, asserting common-law claims of breach of contract and negligent misrepresentation, based on the employer's alleged false assurances that if the plaintiff relocated from England to the defendant's Connecticut affiliate, his pension benefits would remain the same. The defendant removed the action to federal court on the ground of ERISA preemption. The district court held that the claims were preempted by ERISA, and awarded summary judgment to the defendant.

The Second Circuit affirmed. Rejecting the plaintiff's "argument that ERISA preemption will leave him with no adequate remedy," since he was not entitled to additional benefits under the terms of the plan, the Second Circuit agreed with other circuit courts "that the preclusion of remedy does not bar the operation of ERISA preemption." *Id.* at 11 (collecting cases). In addition, the court said, to allow a plaintiff to sue his employer for additional benefits

---

**6.** I also note that this result is not inconsistent with my July 23, 1997 decision denying defendant's summary judgment motion on this claim. That decision rested in large part on the lack of any discovery at that stage, and noted that there were issues about the extent of Xomed's role in administering the plan.

*See Cerasoli II*, 972 F.Supp. at 179–80. In addition, I noted in *Cerasoli I* that it was not clear whether plaintiff would be entitled to any relief under ERISA because of the unavailability of extracontractual benefits under that statute. 952 F.Supp. at 161.

in such a situation "would countermand Congress's express directives. It would irreparably undermine ERISA and would seriously discourage employers from adopting such plans. Eventually, it would reduce the level of financial security for working people." *Id.* at 12. *See also Lee,* 991 F.2d at 1011–12 ("Distasteful as it is to conclude that people who prudently secured insurance may be left nevertheless exposed to the risk [that they will not receive benefits], this suit does not open an avenue to recovery ..."); *Harsch v. Eisenberg,* 956 F.2d 651, 659 (7th Cir.) ("While a broader remedial view [permitting extracontractual damages] might serve the ends of justice in the case before us, we do not think such a view is consistent with the reasoning of [*Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) ]," which held that extracontractual damages are not recoverable in suit under 29 U.S.C. § 1132(a)(2)), *cert. denied,* 506 U.S. 818, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992) ("The fact that ERISA does not provide a substitute remedy reflects not a senseless gap in the statute but a determination to carry through the policy [of protecting the financial integrity of benefit plans] by confining participants to the entitlements spelled out in writing.... [The plaintiffs] ... have no claim, period; and this, as we have emphasized, for reasons grounded in the policy of the statute").

Contrary to plaintiff's position, the Supreme Court's holding in *Varity* did not overrule numerous lower courts' decisions holding that ERISA's preemptive reach can preclude remedies that would otherwise be available under state law. The Ninth Circuit rejected that very argument in *McLeod.* Pointing out that "[t]he plaintiffs in *Varity* were seeking reinstatement as participants in the employer's ERISA

plan," the court stated that "[r]einstatement is equitable, not compensatory, relief. The *Varity* opinion does not alter the holding in *Mertens* that compensatory damages are unavailable under § 502(a)(3)." *McLeod,* 102 F.3d at 379.[7]

## CONCLUSION

Plaintiff's motion for summary judgment and for attorney's fees (Item 42) is denied. Defendant's cross-motion for summary judgment (Item 50) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

---

7. Since plaintiff's motion for attorney's fees was contingent upon his prevailing in this action, that motion must also be dismissed.